UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FRANK LAPENA,<br><br>      Plaintiff(s),<br><br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>      Defendant(s). | Case No. 2:21-CV-2170 JCM (NJK)<br><br>ORDER |

  Presently before the court is the defendants'—Melvyn Harmon and the Estate of Melvyn Harmon—motion to dismiss the claims against them. (ECF No. 102). Plaintiff Frank LaPena filed a response (ECF No. 107), to which the defendants replied (ECF No. 112).

  Also before the court is LaPena's motion to substitute party as to Melvyn Harmon. (ECF No. 143). The defendants filed a response (ECF No. 144), to which LaPena replied (ECF No. 146).

  Because the court grants the defendants' motion to dismiss, LaPena's motion to substitute party is denied as moot.

**I. Background**

  This case involves an alleged decades-long conspiracy to wrongfully convict an innocent man of murder. LaPena alleges over a dozen causes of action and names over a dozen defendants. (*See* ECF No. 24). LaPena brings federal and state claims against Clark County and various prosecutors and law enforcement allegedly involved in his wrongful arrest and conviction. (*Id.*). Defendant Harmon was one of the prosecuting attorneys. The first amended complaint is over 50 pages and includes 164 exhibits—the court summarizes the allegations below.

**James C. Mahan**
**U.S. District Judge**

In 1974, Hilda Krause was violently murdered in her Vegas home by two masked assailants. (*Id.* at 12). One of the assailants, Gerald Weakland, was identified and arrested after a tip from a confidential informant. (*Id.* at 13). Weakland had approached the informant some weeks prior in an attempt to recruit him for the murder. (*Id.*). According to the informant, Weakland did not mention LaPena when discussing the murder plot. (*Id.* at 14). Weakland likewise did not mention LaPena in his initial statements to the police. (*Id.*).

At some later point, Weakland agreed to cooperate with the state in exchange for leniency. (*Id.* at 14). Weakland admitted to his role in the murder and, for the first time, named LaPena as the mastermind behind the plot. (*Id.*). According to Weakland, LaPena and his then-girlfriend hired him to murder Mrs. Krause so that LaPena's girlfriend could marry Mr. Krause and inherit his estate. (*Id.* at 14–15). LaPena was not a suspect before this confession. LaPena theorizes that the police were motivated to pin the murder on him to draw attention away from Mr. Kause, who should have been the primary suspect. (*Id.* at 2, 13).

Based on Weakland's confession, LaPena was arrested, charged, and tried. (*Id.* at 15). A jury found LaPena guilty of first-degree murder in 1977. (*Id.* at 9). Weakland later recanted his confession, and LaPena's conviction was reversed as the state's case rested entirely on that confession. (*Id.* at 20). However, LaPena was convicted again at a second trial after prosecutors "orchestrated a resurrection" of Weakland's original confession. (*Id.* at 21).

In the decades since then, LaPena has maintained his innocence and attempted to exonerate himself through various legal avenues. (*Id.* at 9–10). He was eventually paroled and released from custody in 2005, and in 2019, the Nevada Board of Pardons granted him a general pardon. (*Id.* at 11). LaPena was finally issued a Certificate of Innocence in 2021. (*Id.*; ECF No. 39-10).

LaPena now brings suit alleging that Harmon, along with others, concealed exculpatory evidence, "coerced" Weakland's statements implicating him, conspired to maliciously prosecute him, and thwarted his attempts to exonerate himself. (*See generally id.*). Harmon died in 2020. (ECF No. 56). LaPena also names Harmon's estate as a defendant. (ECF No. 25, at 7).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not

**James C. Mahan**
**U.S. District Judge**

- 3 -

>unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* District courts apply federal pleading standards to state law claims in federal court. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013) (applying federal pleading standards to action removed from state court).

### III.   LaPena's Section 1983 Claims

LaPena brings four § 1983 claims against the defendants: (1) violation of due process; (2) malicious prosecution; (3) failure to intervene; and (4) conspiracy to deprive constitutional rights. (ECF No. 24). Because the court finds that Harmon is entitled to absolute prosecutorial immunity, all four claims are dismissed with prejudice.

Prosecutors are entitled to absolute immunity from liability under section 1983 for actions performed within their prosecutorial function. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) ("Immunity attaches to the nature of the function performed, not the identity of the actor who performed it." (citations omitted)). Actions performed outside that prosecutorial function, such as administrative or investigative functions "normally performed by a detective or police officer," are entitled only to *qualified* immunity. *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).

Thus, when analyzing whether a defendant-prosecutor is entitled to absolute immunity, courts take a "functional approach" by examining whether the "nature of the function performed" falls within the scope of acts "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70 (1993). If the action does, absolute immunity extends even to acts involving malice, bad faith, or conspiracy. *See Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). The defendant-prosecutor bears the burden of showing that immunity attaches to the function in question. *Lacey*, 693 F.3d at 912 (citations omitted).

Actions that the Supreme Court has held to be within the prosecutorial function—and thus covered by absolute immunity—include initiating a prosecution, presenting the government's case, using false testimony at trial, suppressing exculpatory evidence, and even malicious prosecution. *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) (citing *Imbler v.*

James C. Mahan
U.S. District Judge

- 4 -

1   *Pachtman*, 424 U.S.409, 431 (1976)).  Actions *not* covered by absolute immunity include those
2   taken "during the early stages of the investigation" when the prosecutor is acting as a detective
3   rather than an advocate; providing legal advice to police; making false statements to the press;
4   and testifying as a witness.  *Id.* at 1010.

5        All of Harmon's alleged actions are protected by absolute immunity under § 1983.  First,
6   Harmon's alleged pre-trial conduct is limited to the decision to pursue LaPena despite having
7   little evidence.[1]  The decision to pursue a case falls squarely within the prosecutorial function
8   and is protected by absolute immunity.  *Buckley*, 509 U.S. at 273 (holding that acts protected by
9   absolute immunity include "the professional evaluation of evidence assembled by police").

10        LaPena next alleges that Harmon concealed potentially exculpatory statements by the
11   confidential informant during the first trial and prevented LaPena from accessing exculpatory
12   evidence and witnesses for the second trial.  (ECF No. 24, at 15, 21–27).  But these actions were
13   also "intimately associated with the judicial phase of the criminal process," and thus entitled to
14   absolute immunity.  *Imbler*, 424 U.S. at 430 (explaining that suppressing exculpatory evidence is
15   covered by absolute immunity).[2]

16        The complaint also alleges that Harmon wrote favorable *and* unfavorable letters about
17   Weakland to the Nevada Parole Board to "coerce" him to testify against LaPena at the second
18   trial.  (ECF No. 24, at 21).  Even if the court accepts these allegations as true, they are actions
19   squarely within Harmon's role as a zealous advocate for the state and are protected by absolute
20   immunity.  *Buckley*, 509 U.S. at 273 (holding that "acts undertaken by a prosecutor in

---

[1] LaPena does additionally allege that false police reports were created to implicate LaPena in the murder but pleads this so insufficiently that the court cannot accept it as true.  (ECF No. 24, at 43). LaPena does not specify *which* defendants created these police reports, whether any or all of the defendants knew that these police reports were potentially false, or *how* these police reports were "false or misleading."  *Id.*

[2] LaPena attempts to circumvent prosecutorial immunity by claiming in his opposition to defendants' motion to dismiss that Harmon destroyed—rather than merely suppressed— exculpatory evidence.  (ECF No. 107, at 23).  But LaPena did not allege this in the complaint and the court, on a motion to dismiss, is limited to the allegations contained in the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**James C. Mahan**
**U.S. District Judge**

- 5 -

1 preparing…for trial, and which occur in the course of his role as an advocate for the State, are
2 entitled to the protections of absolute immunity").

3 Finally, LaPena alleges that Harmon "litigated against him" in his post-conviction efforts
4 for habeas relief and was part of the conspiracy to frame him for a crime he did not commit.
5 (ECF No. 24, at 27, 37).  Harmon's actions opposing LaPena's post-conviction efforts are
6 quintessential prosecutorial functions protected by absolute immunity.  The allegation that
7 Harmon conspired to frame LaPena does not rise above a mere speculative level as LaPena
8 provides no specific factual support for this allegation other than those already addressed by the
9 court.  The court dismisses all of LaPena's federal claims against the defendants with prejudice.

**IV.     LaPena's State Law Claims**

The court has supplemental jurisdiction over LaPena's state law claims against the defendants.  LaPena alleges common law malicious prosecution (claim 6), common law abuse of process (claim 7), intentional infliction of emotional distress (claim 8), civil conspiracy (claim 9), negligent infliction of emotional distress (claim 11), and "insurance claims" (claim 13) against the defendants.  (ECF No. 24).  The court dismisses each of these claims.

A.     Malicious Prosecution

As an initial matter, the court finds that Harmon is not entitled to absolute prosecutorial immunity for LaPena's state law malicious prosecution claim.  Nevada permits a limited exception to absolute prosecutorial immunity when "prosecutor[s] face[] an actual conflict of interest" and file charges they know to be baseless.  *Stevens v. McGimsey*, 673 P.2d 499, 500 (Nev. 1983).  In other words, absolute immunity does not apply "where the allegations suggest malicious prosecution." *Edgar v. Wagner*, 699 P.2d 110, 112 (Nev. 1985).

Defendants argue that this claim should instead be dismissed for being insufficiently pled.  (ECF No. 102, at 13).  LaPena responds with allegations not made in the complaint and additional conclusory statements.  (*See generally* ECF No. 107).  Because LaPena failed to set forth sufficient facts to state a claim for malicious prosecution as to the Harmon defendants *in the complaint*, the court must dismiss this claim.

**James C. Mahan**
**U.S. District Judge**

- 6 -

The elements for Nevada's malicious prosecution claim are: (1) lack of probable cause to initiate the criminal proceeding, (2) malice, (3) termination of that criminal proceeding, and (4) damages. *LaMantia v. Redisi*, 38 P.3d 877, 879 (2002). "The existence of good faith and probable cause for an arrest invalidates a claim for malicious prosecution." *Mirch v. Clifton*, 2015 WL 6681231, at *1 (Nev. 2015) (slip op.).

The Nevada Supreme Court has yet to define "malice" in the context of malicious prosecution, but this court is persuaded that it would look to the Restatement (Second) of Torts for guidance, as it has done in the past.[3]  *See, e.g.*, *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (Nev. 2009) (citing the Restatement (Second) of Torts).  The Restatement states that malice requires the criminal proceedings to have been "initiated *primarily* for a purpose other than that of bringing an offender to justice." Restatement (Second) of Torts § 668 (1977) (emphasis added).

LaPena does not plead sufficient factual allegations to support the element of malice as to Harmon. Most of LaPena's allegations against Harmon must be disregarded as statements merely reciting the elements of the cause of action. The remaining factual allegations do not plead malicious prosecution above a mere speculative level and are mostly conclusory. The complaint is riddled with general allegations against all 17 defendants, rather than specific factual allegations against Harmon.

LaPena—at most—pleads only facts that suggest certain LVMPD officers knew that Weakland's statements about him were untrustworthy. LaPena fails to plausibly plead that *Harmon* knew this or that he prosecuted him "primarily for a purpose other than" bringing him to justice for Mrs. Krause's murder. LaPena does not allege that Harmon was involved in the police investigation of Weakland. LaPena also fails to explain how Harmon could have known that Weakland was lying about his involvement in the murder. (*See* ECF No. 24, at 12–14, 19).

Based on the complaint, Harmon—at most—knew only that Weakland never mentioned LaPena to the confidential informant. (ECF No. 24, at 19, ¶ 106). But this alone does not

---

[3] Where the state's highest court has not decided an issue of law, the district court's task is to "predict" how that court would rule. *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011).

James C. Mahan
U.S. District Judge

- 7 -

establish malice in prosecution above a mere speculative level because Weakland, the person *directly* involved in the murder, had implicated LaPena in his statements to Harmon. Harmon had more than probable cause to believe that LaPena was involved in the murder. The court finds that LaPena failed to adequately plead malicious prosecution and dismisses this claim against the defendants, without prejudice.

### B. LaPena's Remaining State Claims

LaPena's remaining state claims must be dismissed because Harmon is protected by absolute prosecutorial immunity. Nevada applies absolute immunity to state tort claims arising out of a prosecutor's prosecutorial function. *See Dorsey v. City of Reno*, 238 P.3d 807 (Nev. 2008) (table) (applying immunity to claims of negligent and intentional infliction of emotional distress); *Mirch*, 2015 WL 6681231, at *1–2 (affirming a district court's order dismissing abuse of process claims based on absolute immunity). Other than for the narrow exception discussed earlier in this order, Nevada's application of absolute prosecutorial immunity tracks federal law. *See, e.g.*, *McGimsey*, 673 P.2d at 500 (recognizing the applicability of *Imbler* and finding only a "limited" exception for malicious prosecution).

LaPena's remaining state tort claims against the defendants must therefore be dismissed with prejudice because they are supported by the same underlying factual allegations as his § 1983 claims. The reasoning the court applied to dismiss LaPena's § 1983 claims applies here in equal force. Regardless of LaPena's later-found innocence, Harmon cannot be held liable for civil damages based on actions he took within his prosecutorial function.

## V. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the defendants' motion to dismiss (ECF No. 102) be GRANTED. The defendants are dismissed from this case.

Specifically, the court ORDERS that LaPena's first, second, third, fourth, seventh, eighth, ninth, eleventh, and thirteenth causes of action against Melvyn Harmon and the Estate of Melvyn Harmon are dismissed WITH PREJUDICE. LaPena's sixth cause of action against Melvyn Harmon and the Estate of Melvyn Harmon is dismissed WITHOUT prejudice.

**James C. Mahan**
**U.S. District Judge**

- 8 -

IT IS FURTHER ORDERED that LaPena's motion to substitute party as to Melvyn Harmon (ECF No. 143) be DENIED as MOOT.

DATED November 27, 2023.

_____
UNITED STATES DISTRICT JUDGE